UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN RILEY,<br>　　　　Plaintiff,<br><br>　　v.<br><br>BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY,<br>　　　　Defendant. | Case No. 13-cv-02983-JD<br><br>**ORDER RE SUMMARY JUDGMENT**<br>Re: Dkt. No. 39 |

Plaintiff Susan Riley is a woman over age 60 employed at the Sonoma State University. Riley alleges that Sonoma State discriminated against her on age and gender grounds when it hired a younger man rather than her for a Development Officer position. Riley also claims that she did the same work as this male co-worker but was paid less. Defendant California State University ("CSU") moves for summary judgment mainly on the ground that Riley's claims are for the most part time-barred. The Court largely grants the motion but finds that one event should proceed to trial.

## BACKGROUND

The Development Office at Sonoma State University hired Riley in November 2007 as a temporary Administrative Assistant to the Associate Vice President. Riley Depo. at 152, Dkt. No. 39-4. About three months later, she was hired as a permanent "Confidential Office Support" employee. *Id.* at 154. Her primary job was to work as an executive assistant to the Vice President. *Id.* at 165-66. Riley managed calendars, answered phones, and prepared letters. *Id.* at 166. She also did some fundraising work such as serving as the point person for CSU's fundraising database and interacting with foundations to submit proposals and reports. *Id.* Riley

continued in this role until November 2010, when she became Executive Assistant to the Vice President. *Id.* at 175-76.

In 2010, Riley also began fundraising for the CSU's Green Music Center. *Id.* at 164. She enjoyed the work and expressed an interest in becoming a Development Officer, a full-time fundraising position, to her supervisors Erik Greeny (Associate Vice President of University Development) and Patricia McNeill (Vice President of University Development). Riley Decl. ¶ 4, Dkt. No. 45. Riley asked for an increase in pay to reflect these additional responsibilities, but the request was denied. *Id.* ¶ 5. By the end of 2010, Riley had met with McNeill and Greeny several times about becoming a Development Officer. *Id.* ¶ 7.

The events leading to Riley's complaint crystalized in January 2011, when CSU hired Chris Fadeff, a 27-year-old male, as a temporary Development Officer. Fadeff Depo. at 52, Dkt. No. 39-3. The position was not posted, no recruitment process appears to have occurred, and Riley was not included in the hiring mix. At the end of the year, in December 2011, Fadeff's temporary position was extended. *Id.* at 8. Also around this time, McNeill retired and Greeny became the Interim Assistant Vice President of University Development. *Id.* at 4.

In December 2011, Sonoma State posted a permanent Development Officer position for internal candidates. Riley Decl. ¶ 11, Dkt. No. 45. Applications were due by April 18, 2012, and Riley applied on April 17, 2012. Riley Depo. at 86, 93, Dkt. No. 39-4. Riley told Greeny that she had applied. *Id.* That same day, Greeny told Terrie DeLorm in Human Resources that Riley "had told [him] she applied" and he was not "comfortable with posting [the] position when -- if the university had the ability to reappoint Chris Fadeff." Greeny Depo. at 72, Dkt. No. 39-5. DeLorm called Riley that day and told her that the position had been put on hold. Riley Depo. at 109-11, Dkt. No. 39-4. On April 19, 2012, DeLorm called Riley again and said the position had been cancelled. *Id.* at 111.

In January 2013, CSU extended Fadeff's temporary appointment for a second time. Dkt. No. 39 at 10. The CSU Director of Employee Services, Kathleen Spitzer, told Greeny that he would eventually need to interview candidates for the position, and that he could not "keep going on with this indefinitely." Greeny Depo. at 90, Dkt. No. 39-5. Laurence Schlereth, Vice President

2

1  for Finance and Administration, testified that Greeny could have opened the application process
2  and interviewed other candidates. Schlereth Depo. at 81-82, Dkt. No. 42. But in January 2013,
3  Greeny once again reappointed Fadeff as a temporary Development Officer for a one-year period
4  without an open recruitment process. Greeny Depo. at 80, 167, Ex. 46, Dkt. No. 39-5. Riley
5  alleges that when she asked Greeny how he could continue to reappoint Fadeff, Greeny raised his
6  voice and said he did not have to answer to her. Riley Depo. at 132-33, Dkt. No. 39-4. Riley filed
7  a complaint with the Department of Fair Employment and Housing on March 19, 2013.

8       On May 13, 2013, Sonoma State posted two permanent (non-temporary) Development
9  Officer positions. Dkt. No. 41 at 8. Riley applied on May 26, 2013. *Id.* On October 20, 2013,
10 Greeny announced that Fadeff was resigning from his position as temporary Development Officer.
11 Greeny Depo. at 177, Dkt. No. 39-5. Riley was hired as a regular Development Officer on
12 October 31, 2013. Riley Depo. at 37, Dkt. No. 39-4.

13      Plaintiff sued on three claims: (1) California FEHA discrimination; (2) federal Title VII
14 discrimination; and (3) an equal pay violation under California Labor Code § 1197.5. The FEHA
15 and Title VII claims allege disparate treatment on age and gender grounds for CSU's failure to
16 hire or promote Riley to Development Officer in January 2011, December 2011, January 2012 and
17 January 2013.

## DISCUSSION

19      As amended in 2010, Rule 56 of the Federal Rules of Civil Procedure provides that a
20 "party may move for summary judgment, identifying each claim or defense -- or the part of each
21 claim or defense -- on which summary judgment is sought. The Court shall grant summary
22 judgment if the movant shows that there is no genuine dispute as to any material fact and the
23 movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The current version of
24 Rule 56 changed the federal summary judgment process by authorizing the Court to grant what is
25 sometimes called partial summary judgment to dispose of less than the entire case and even just
26 portions of a claim or defense. *See* Fed. R. Civ. P. advisory committee notes, 2010 amendments;
27 *see also Smith v. State of Cal. Dep't of Highway Patrol*, No. 13-CV-01341-JD, 2014 WL
28 6985092, at *3 (N.D. Cal. Dec. 10, 2014). Now the Court can, when warranted, selectively fillet a

3

1   claim or defense without dismissing it entirely.  The current version of Rule 56 also emphasizes

2   that the Court "shall" issue summary judgment when warranted by the facts and the law.  *Id.*

3         The traditional standards for summary judgment remain in place.  A dispute is genuine "if

4   the evidence is such that a reasonable jury could return a verdict" for either party.  *Anderson v.*

5   *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material if it could affect the outcome of

6   the suit under the governing law.  *Id*. at 248-49.  To determine whether a genuine dispute as to any

7   material fact exists, a court must view the evidence in the light most favorable to the non-moving

8   party.  *Id*. at 255.  A principal purpose of summary judgment "is to isolate and dispose of factually

9   unsupported claims."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  On summary

10  judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to

11  be drawn in his favor."  *Anderson*, 477 U.S. at 255.

12        In determining whether to grant or deny summary judgment, it is not the Court's task "to

13  scour the record in search of a genuine issue of triable fact."  *Keenan v. Allan*, 91 F.3d 1275, 1279

14  (9th Cir. 1996) (quotations omitted).  Rather, it is entitled to rely on the nonmoving party to

15  "identify with reasonable particularity the evidence that precludes summary judgment."  *Id*.

16        CSU brought this motion on all of Riley's claims, including a claim of discrimination from

17  a raise given to Fadeff.  Riley's opposition did not address that claim, so this order deems it

18  abandoned for all purposes in this case.

19  **I.  STALE FEHA CLAIMS**

20        CSU's first attack is on the timeliness of Riley's state-law claim.  The California Fair

21  Employment and Housing Act (FEHA) requires employees to file an administrative complaint

22  within one year of the allegedly discriminatory or harassing conduct.  Cal. Gov. Code § 12960(d)

23  ("No complaint may be filed after the expiration of one year from the date upon which the alleged

24  unlawful practice or refusal to cooperate occurred . . .").  Incidents occurring more than one year

25  before the filing of the administrative claim are untimely unless the continuing violation doctrine

26  applies.  *See Cucuzza v. City of Santa Clara*, 104 Cal. App. 4th 1031, 1040 (2002).  Here, Riley

27  filed a claim with the California Department of Fair Employment and Housing on March 19, 2013,

28

1    so the conduct she is permitted to sue on must have occurred between March 19, 2012 and March
2    19, 2013.
3         The parties agree that the January 2013 failure to hire or promote claim is timely, but
4    plaintiff asserts that the other three failures to hire or promote, which all occurred prior to March
5    19, 2012, are also timely under the continuing violations doctrine.  Under this doctrine, an
6    employer is liable for actions that take place outside the limitations period if these actions are
7    linked to unlawful conduct that occurred within the limitations period.  *Yanowitz v. L'Oreal USA,*
8    *Inc.*, 36 Cal. 4th 1029, 1056 (2005).  The continuing violation doctrine applies when an
9    employer's unlawful acts are (1) sufficiently similar in kind; (2) have occurred with reasonable
10   frequency; and (3) have not acquired a degree of permanence.  *Richards v. CH2M Hill, Inc.*, 26
11   Cal. 4th 798 (2001).  The doctrine serves as an "equitable exception to the timely filing
12   requirement" of the FEHA to protect a plaintiff who may not immediately suspect unlawful
13   conduct because the conduct at issue has not yet matured into a recognizable claim.  *Morgan v.*
14   *Regents of Univ. of Cal.*, 88 Cal. App. 4th 52, 63-65 (Cal. Ct. App. 2000) (quotations and citation
15   omitted) ("[T]he continuing violation doctrine is premised on the equitable notion that the statute
16   of limitations should not begin to run until a reasonable person would be aware that his or her
17   rights have been violated.").  Plaintiff bears the burden of establishing the conditions required to
18   apply the doctrine.  *Maridon v. Comcast Cable Commc'ns Mgmt., LLC*, No. C-12-2109 EMC,
19   2013 WL 1786592, at *11 (N.D. Cal. Apr. 25, 2013).
20        Riley has not carried that burden.  The failure to hire or promote Riley in 2011 and 2012
21   were distinct hiring decisions that, once made, amounted to permanent actions.  "Discrete
22   instances of denials of hiring or promotion are generally made permanent when a plaintiff is
23   informed that he or she has not been hired or promoted to a position."  *Burrell v. County of Santa*
24   *Clara*, No. 11-CV-04569-LHK, 2013 WL 2156374, at *15 (N.D. Cal. May 17, 2013) (citing
25   *Maridon*, 2013 WL 1786592, at *13) (finding that a plaintiff's "failure to secure past promotions
26   in a number of specific, discrete instances" was final as to each incident)); *see also Gardner v.*
27   *City of Berkeley*, 838 F. Supp. 2d 910, 921 (N.D. Cal. 2012) (finding employment actions final
28   when "[e]ach event involved a final decision to either retire or not reinstate Plaintiff, with no

opportunity for further discussion ... [Although Defendants] could still hire Plaintiff in the future, a final decision was still made to not hire Plaintiff *at that time*.") (emphasis in original). On each occasion when CSU hired or rehired Fadeff, it made a final decision not to hire or promote Riley into that position. Riley herself concedes that "each promotion [was] an individual event and . . . she knew she would not get that particular promotion." Dkt. No. 41 at 16. And Riley believed she had been discriminated against when the Development Officer position was posted in January 2012 and then cancelled after Riley told Greeny she was interested in the position. Riley testified that when the posting was cancelled, she believed that the decision was motivated at least in part by her age or gender and that the decision was "illegal." Riley Depo. at 118-19, Dkt. No. 39-4. These facts preclude application of the continuing violations doctrine.

Consequently, the 2011 and 2012 FEHA claims are time-barred. Summary judgment is granted in favor of CSU on them.

## II. STALE TITLE VII CLAIMS

Riley's Title VII incarnations of the 2011 and 2012 claims are also dismissed as time-barred. A plaintiff has either 180 or 300 days from the date of the alleged discrimination to file a complaint with the Equal Employment Opportunity Commission ("EEOC"). 42 U.S.C. § 2000e-5(e)(1) (1998). The Ninth Circuit has held that if a Title VII plaintiff fails to file an EEOC charge within this deadline, she is precluded from filing a civil action in federal court under Title VII. *Sosa v. Hiraoka*, 920 F.2d 1451, 1455 (9th Cir. 1990). Riley filed a charge with the EEOC on March 19, 2013.

The same facts that barred the FEHA claims apply here because the Title VII deadline is shorter than the one-year FEHA deadline. Even spotting Riley the benefit of the 300-day clock, she cannot sue under Title VII for any incident other than the January 2013 claim. This is because she filed with the EEOC on March 19, 2013, and the 300-day cut-off is May 24, 2012. All of Riley's claims other than the January 2013 claim stem from events occurring prior to May 24, 2012, and are therefore time-barred. Plaintiff acknowledged at the hearing that the continuing violations doctrine does not apply to discrete discriminatory acts in the Title VII context, as alleged here. *See Nat'l R.R. Passenger*, 536 U.S. 101, 113 (2002) ("discrete discriminatory acts

are not actionable if time barred, even when they are related to acts alleged in timely filed charges."); *Thompson v. C&H Sugar Co.*, No. 12-CV-00391 NC, 2014 WL 1792876, at *8 (N.D. Cal. May 5, 2014) ("Unlike a claim under FEHA, a plaintiff cannot recover under Title VII . . . for a series of discriminatory acts that occur prior to the statutory period, even when those acts are related to timely discriminatory actions."). Summary judgment is granted to CSU on the 2011 and 2012 Title VII sex discrimination claims. The January 2013 claim will go forward.

Additionally, Title VII does not provide a cause of action for age discrimination. Accordingly, the Court grants the motion for summary judgment to the extent Riley alleges a Title VII age discrimination claim.

## III.   DISPARATE TREATMENT

After application of the timeliness rules, Riley's surviving Title VII and FEHA claim is for discrimination based on disparate treatment arising out of the January 2013 event. To avoid summary judgment on this claim, Riley must make out a prima facie case of discrimination by showing: (1) she is a member of a protected class; (2) was performing the position she held competently; (3) suffered an adverse employment action; and (4) that similarly situated individuals outside the protected class were treated more favorably, or other circumstances give rise to an inference of unlawful discrimination. *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010). The bar Riley must cross here is low. The Ninth Circuit has repeatedly held that "[t]he burden of establishing a prima facie case of disparate treatment is not onerous." *See, e.g., Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). On summary judgment, the degree of proof necessary to establish a prima facie case "is minimal and does not even rise to the level of a preponderance of the evidence." *Schechner v. KPIX–TV*, 686 F.3d 1018, 1025 (9th Cir. 2012) (citing *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)).

CSU agrees that Riley meets the first three prongs of a prima facie case, but argues that she has failed to satisfy the fourth prong -- that the circumstances give rise to an inference of unlawful discrimination. The Court disagrees. The facts in the record are more than enough to make out the inference under the low threshold that governs. Among other pertinent facts, CSU hired

1  Fadeff, a younger male, without any formal recruitment process or properly posting the job
2  opening. CSU never interviewed Riley, even though she repeatedly asked to be considered. CSU
3  extended Fadeff's time in the position through an odd series of temporary appointments, and
4  appears to have left him in that position beyond the time allowed under CSU employment policies.
5  CSU Non-Faculty Recruitment Policy #2000-5 applies to "all University and auxiliary non-faculty
6  position openings, except temporary short-term appointments (90 calendar days or less)." Dkt.
7  No. 42, Ex. 64. Section E-1 of the policy requires a recruitment process for "filling a vacancy for
8  a temporary position with a duration period greater than 90 days." *Id.* Fadeff remained in the
9  temporary Development Officer position for more than 90 days, but no recruitment process ever
10 took place. Kathleen Spitzer testified that Section E-1 does not apply to management positions
11 such as the Development Officer position, but that testimony is not supported by the plain
12 language of the policy itself. Spitzer Depo. at 70, Dkt. No. 42.
13 Consequently, summary judgment is denied. The FEHA and Title VII disparate treatment
14 claims will go forward on the January 2013 incident.

## IV. EQUAL PAY CLAIM

Riley also alleges that she was denied equal pay on account of her gender in violation of California's Equal Pay Act ("EPA"). Under California's EPA, it is unlawful for employers to pay employees of one gender less than employees of the other gender "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." Cal. Labor Code § 1197.5(a). A prima facie unequal pay claim requires the plaintiff to adduce evidence that her employer paid an individual of the opposite sex more than her for substantially equal work. *See Stanley v. University of Southern California*, 178 F.3d 1069 (9th Cir. 1999); *Green v. Par Pools Inc.*, 11 Cal. App. 4th 620, 623 (2003) (holding that the California EPA is substantively identical to its federal counterpart). "The crucial finding on the equal work issue is whether the jobs to be compared have a 'common core' of tasks, i.e. whether a significant portion of the two jobs is identical." *Stanley*, 178 F.3d at 1074 (citation omitted).

Riley has not established the requisite equivalence. As an initial matter, Riley provided little guidance to the Court about Fadeff's responsibilities and duties as a Development Officer. If there are truffles for the plaintiff in the record on this issue, it is Riley's duty to dig them up. The Court will not root through depositions and documents on her behalf. Without that evidence, Riley has scant basis to make a reasoned comparison of potential job equivalence between herself and Fadeff. This alone is enough to doom the equal pay claim, and the rest of the record underscores that outcome. Riley claims her work was substantially equal to Fadeff's because they "both raised money for SSU." Dkt. No. 41 at 24. This assertion, however, is conclusory, unsupported by citations to the record and not in line with the facts. As a "Confidential Office Support" and "Executive Assistant," Riley's job was to serve as an Executive Assistant to the Vice President. Riley Depo. at 165-66, Dkt. No. 39-4. This consisted primarily of administrative tasks like managing calendars, answering phones and preparing letters. *Id.* She also did some fundraising in addition to her administrative tasks, but never as a main job duty or focus. *Id.* at 168. Fadeff, on the other hand, did nothing but fundraising and donor development in his job. Dkt. No. 39 at 18; Dkt. No. 39-5 at 146, Ex. 34; Dkt. No. 39-3 at 55-56. At best, Riley has established a slight overlap in responsibilities because Riley did some fundraising work in addition to her main administrative tasks. But that is far too thin a showing to proceed with an equal pay claim. Summary judgment is granted to CSU on the Equal Pay Act claim.

## CONCLUSION

Summary judgment is largely granted, but the FEHA and Title VII claims of disparate treatment arising out of the January 2013 event will go forward to trial. The Court notes that this order leaves an operative damages period of January to October 2013, when Riley got the

//
//
//
//
//
//

9

Case 3:13-cv-02983-JD   Document 72   Filed 05/11/15   Page 10 of 10

Development Officer job.  The Court hopes the parties will engage in a realistic assessment of the costs and benefits of trying this case to a jury over such a discrete damages amount.

**IT IS SO ORDERED.**

Dated: May 11, 2015

_____
JAMES DONATO
United States District Judge